## MUSSINAN v. NEW YORK STEAM CO.

(Supreme Court, Appellate Division, Second Department.   July 1, 1899.)

1. APPEAL—HARMLESS ERROR.
> Appellant cannot complain that, in arriving at a verdict against him, the jury made reductions not justified by the evidence.

2. SALES—COMPLIANCE WITH SPECIFICATIONS—EVIDENCE.
> Where a test of a boiler was made in the presence of the buyer, after it had been put up, and payments were afterwards made on the purchase price, a finding that it developed the required horse power is justified.

3. SAME.
> On the issue whether a boiler was of the capacity provided for in the specifications, the use of the word "approximately" in the contract, a provision that the price was to be a certain sum per unit of horse power, as indicated per specifications attached, and specifications providing circumstances under which the power should be developed, are competent evidence.

4. SAME.
> Evidence that a hydrostatic test of a boiler was successfully made before it left the builder's shop, as required by the contract of sale, and that a test was made by the official inspectors after it was in working order, is sufficient to sustain a finding that it complied with the contract.

Appeal from trial term, Kings county.

Action by Alfred Mussinan against the New York Steam Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James W. Hawes, for appellant.

Frank E. Blackwell (Herbert A. Heyn, on the brief), for respondent.

GOODRICH, P. J.   The plaintiff sues to recover the balance due to him as the assignee of the Edgar Boiler Company, Limited, for a boiler erected upon the premises of the defendant, under a written contract consisting of offer, specifications, and acceptance.   The defendant denied that the boiler was built in accordance with the contract, and alleged that it was leaky and unsuitable for the purpose named in the contract, that it had notified the company to remove it, and claimed as a set-off the expense to which the defendant was subjected in preparing its premises for the reception of the boiler, and in the loss of rent by its location on the premises of the defendant, and the sum necessary to expend in removing the boiler from its place. The issues were tried before a jury, which rendered a verdict of $7,500 for the plaintiff.   Upon this verdict the judgment was rendered, from which the defendant appeals.

The testimony in the case centered chiefly upon the amount of horse power which the boiler was capable of developing, and also upon its leaky condition.   The specifications provided that the horse power should be developed on a certain basis of water capacity per hour, and certain gauge pressure, with the use of "No. 1 of buckwheat coal of good grade."   Several trials of the boiler's capacity were made previously to a final trial made on October 5th.   These trials developed

different powers, from 484 to 966. The coal on such trials was furnished by the defendant, and there was some evidence that it was not of the grade specified in the contract; but after these trials further work was done on the boiler, and finally a trial was had on October 5th, at which Mr. St. John, the vice president, and Mr. Wood, the superintendent, of the defendant, were present. A certificate of the result, signed by Mr. Wood, was put in evidence, which stated that 1,039 horse power had been developed at that trial, although some of the conditions were somewhat different from those named in the specifications. The defendant contends that the coal used on this trial was selected by the builders with unusual care, was exceptionally good, and was above the grade of coal referred to in the contract; but we are satisfied, from the evidence, that such coal only complied with the grade named in the contract.

It is not possible to say whether the jury arrived at the amount of the verdict by averaging the amounts of horse power developed on several occasions, and multiplying that by the price of $9 per unit of horse power, or whether, in addition to that, they found that there were some damages or deficiency for which allowance was made, under the clause of the contract that:

"All material and workmanship to be first class, and lower head of boiler guarantied to stand ordinary legitimate use for five years without developing any serious effects beyond those due to ordinary wear and tear."

It does not lie in the mouth of the defendant to aver that such deduction was not justified on the evidence; for such allowance, if any was made, was in its favor.

The boiler remained in the defendant's possession, without objection or offer to return, until May 7, 1897, when the letter of that date was written requesting its removal. The jury were justified in finding that the boiler had been previously accepted by the defendant as complying with the contract.

There was also testimony showing leaks of more or less importance, and repairs made thereof. The evidence was conflicting, but of a character requiring its submission to the jury. The court submitted the questions whether the boiler developed approximately 1,000 horse power, whether it substantially complied with the conditions of the contract, and whether it was defective. It may be conceded that it was the intention of the parties that the boiler was to be sufficient to develop approximately 1,000 horse power under ordinary use, but the trial made in the presence of the parties, and the subsequent payments on the contract by the defendant, are sufficient to support the verdict in that respect. The use of the word "approximately" in the contract; the provision that the price was to be, not a gross sum, but $9 per unit of horse power, as indicated per specifications attached; and the specifications providing for circumstances under which the power should be developed,—were all competent evidence to be submitted to the jury in determining the question. There was also evidence that, after the trial of October 5th, payments were made by the defendant on account of the contract, which, although not to the amount which the contract required upon the delivery of the boiler on the premises, were in some sense an acknowledgment of the suf-

ficient character of the boiler. If the builders had failed to comply with the contract, the defendant could have refused to make any payment whatever.

An analysis of the verdict shows that the jury did not find the entire amount claimed by the plaintiff, namely, $8,101, being the contract price, less the sum of $1,250 paid on account, but found a verdict for $7,500, which is equivalent to $9 per unit for 833 horse power. The contract required the delivery of the boiler on the defendant's premises on May 1, 1896. It was not delivered until August 1st, but the evidence discloses no objection on the part of the defendant to this delay. The contract also required a hydrostatic test of the boiler before it left the builder's shop. There is no dispute that this test was successful; and this and a subsequent test by official inspectors, after the boiler was in working order, justified the jury in finding that in that respect it complied with the contract.

It appears that all questions of fact in respect to which there was conflicting evidence were properly submitted to the jury, and court and suitors must abide the verdict. We may add that, in our opinion, the verdict is justified by the evidence. The appellant's counsel contends with great earnestness that some action of the learned court during the trial, and some portions of the charge, prejudiced the defendant's rights. We have carefully examined his brief upon this subject, but find that this contention is utterly without foundation. No other question of law appears to require our attention.

The judgment should be affirmed. All concur.